370 P.2d 258

Guy P. DECKER, Administrator of the
Estate of M. V. Decker, Deceased,
Appellant,

v.

A. I. RAMENOFSKY and Elizabeth
Ramenofsky, his wife, and Harry
E. Davis, Appellees.

No. 6827.

Supreme Court of Arizona.

In Division.

March 28, 1962.

Rehearing Denied May 4, 1962.

Marshall W. Haislip, Phoenix, for appellant.

Spector & Johnson, Phoenix, for appellees.

ROBERT O. ROYLSTON, Superior Court Judge.

Appellant, Guy P. Decker, Administrator of the Estate of M. V. Decker, Deceased, brought this action against A. I. Ramenofsky and his wife, Elizabeth, for cancellation of a deed, and against Harry E. Davis for return of a real estate broker's commission. The sole question at the trial was the mental competency of the decedent to execute a deed. An advisory jury found that the decedent was mentally competent to execute the deed. Thereafter, a judgment was entered in favor of the defendants, and this appeal resulted.

Although appellant's brief contains seven assignments of error, these actually fall into three questions to be answered by this Court:

1. Was there sufficient evidence adduced to support the finding by the jury and the judgment entered by the court?

2. Were certain instructions erroneous and, if so, was that error prejudicial?

3. Did the court err in permitting an expert witness to answer certain hypothetical questions and, if so, was that error prejudicial?

The questions will be considered in the order stated.

During the eight days of trial, both plaintiff and defendants presented many witnesses whose testimony was highly conflicting. We have repeatedly held that we will not weigh the evidence when it is conflicting, and the decision of the trial court will be sustained if there is sufficient evidence to support it. Odom v. First National Bank of Arizona, 85 Ariz. 238, 336 P.2d 141; Bank of Arizona v. Harrington, 74 Ariz. 297, 248 P.2d 859.

While appellant exhaustively attacks the sufficiency of evidence, we think it is clear from examination of the entire record that there is substantial evidence to support the judgment. Decedent executed the deed under consideration on November 8th, 1955, at a time when he was about 86 years of age. Prior thereto in February of 1952, he had suffered a stroke which impaired his walk and speech. He had been for many years a sergeant-at-arms in the State House of Representatives. Certain members of the House during the 1953–1954 session were

called as witnesses and testified concerning his mental condition during 1953–1954. Their testimony was that he was a competent, independent, stern person, that while he had suffered a physical impairment from a stroke several years before, he did not thereafter have any personality changes, that he recognized some 80 members of the House through February of 1954. The nurse who attended decedent at St. Luke's Hospital testified that at about the time the transaction was consummated decedent was alert and coherent, and that she did not observe any psychiatric traits. Dr. Maier Tuchler, a practicing psychiatrist, testified that decedent was suffering from "simple senility", that he could not find evidence of arteriosclerosis, senile psychosis, senile dementia, psychotic behavior, delusions, lack of orientation, failure of judgment, or deficiency in capacity to reason.

Appellant argues that it must be established that decedent had the mentality to know the probable value of his property, the location, the ability to weigh and consider the advantage of selling his property, or the disadvantage of not selling and holding his property. Wholly aside from the shift in the burden of proof implied from appellant's argument, the foregoing testimony concerning decedent's unimpaired mental condition · suggests that he was capable of understanding and appreciating the nature and effect of the execution of the deed.

Plaintiff contends that certain instructions given to the jury were erroneous. This being an equity case, it is unnecessary to set out the instructions complained of, or to pass on their correctness. This Court stated in Wilson v. Coerver, 35 Ariz. 488, 279 P. 253, as follows:

"The third assignment, that the court erred in its instruction, is immaterial. In an equity case, where the verdict is merely advisory, by the overwhelming weight of authority, even where the judge adopts the answers made by the jury, the losing party may not complain of error in the instructions, since the answers, when adopted, become the decision of the trial court itself on the facts."

And see Amado v. Aguirre, 63 Ariz. 213, 161 P.2d 117, 160 A.L.R. 1126.

Appellant argues that the rule is limited to those cases where the trial court made findings and did not simply adopt the findings of the jury. Authority is cited that errors in charging the jury become material if they show that the court misconceived the law of the case or decided it upon a wrong theory. We might be disposed to agree with appellant, if the instructions here complained of indicated a basic misconception of the governing principles of law applicable. Such is not the case.

**100**

■ Appellant attacks the instructions for the reason that they constitute a comment on the evidence in violation of the Arizona Constitution, Art. 6, Sec. 12, now Art. 6, Sec. 27, A.R.S. In effect it is conceded that as an abstract proposition the instructions are correct. If we assume that the instructions were comments on the evidence, a question we expressly do not decide, nevertheless an examination of the instructions as a whole convinces us that the trial judge was not laboring under any illusions as to the law applicable to the decision.

■ The last matter for determination concerns whether the trial court erred in permitting a psychiatrist to answer certain hypothetical questions. The qualifications of the witness as an expert are not disputed. The questions are very long and contain many factual matters and it would serve no useful purpose to state the questions here. The plaintiff's objections appear to be that the answer invades the province of the jury, and that not all the facts admitted in evidence were included in the questions.

Wigmore, in discussing hypothetical questions in Section 673, Wigmore on Evidence, (3rd ed. 1940), describes the "usurping the province of the jury" as a "false theory." After further discussion he concludes, "The 'usurpation' theory * * * has done much to befog bench and bar, and to assist in pro-

ducing some of the confusion which attends the precedents." Nothing further need be said as to this contention.

The other objection appears to be without merit also. Wigmore also covers this at Section 682(b), supra, as follows:

"The question, on principle, *need not include* any particular number of facts; i.e. it may assume any one or more facts whatever, and *need not cover all the facts which the questioner alleges* in his case. The questioner is entitled to the witness' opinion on any combination of facts that he may choose. It is often convenient and even necessary to obtain that opinion upon a state of facts falling short of what he or his opponent expects to prove, because the questioner cannot tell how much of the testimony the jury will accept; and if proof of the whole should fail, still proof of some essential part might be made and an opinion based on that part is entitled to be provided for the jury. For reasons of principle, then, and to some extent of policy, the natural conclusion would be that the questioner need not cover in his hypothesis the entire body of testimony put forward on that point by him or by the opponent, but may take as limited a selection as he pleases and obtain an opinion on that basis. Such is the

orthodox doctrine as applied by most Courts."

Of course, the trial court must use its discretion to prevent the abuse of the hypothetical question, and should interfere to prevent questions framed in such a way or using only such facts as are either intended or likely to mislead the jury. The hypothetical questions complained of here are fair and proper under the factual circumstances of this case.

Appellant urged that it was immaterial on the issue of this case whether the decedent was "medically" competent to execute the deed. As to the opinion of Dr. Tuchler in this respect, appellant argues that the issue at the trial was not whether decedent was psychiatrically sane, but whether he had sufficient legal capacity to transact business. It is true the ultimate question for determination was the decedent's legal capacity on the day in question, but this ultimate question must be determined from all the evidence in the case. Whether the decedent was or was not medically sane is one of the facts, together with others, from which there could be inferred legal capacity, or the want thereof.

Judgment is affirmed.

STRUCKMEYER and LOCKWOOD, JJ., concur.