555 P.2d 670

**INTERNATIONAL HARVESTER COMPANY, a Delaware Corporation, Appellant,**

**v.**

**Joseph CHIARELLO and Lavinia Chiarello, husband and wife, Appellees.**

**No. 1 CA–CIV 2876.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 9, 1976.

Rehearing Denied Oct. 6, 1976.

Petition for Review Denied Oct. 26, 1976.

**412**

Snell & Wilmer by Warren E. Platt and Charles K. Ayers, Phoenix, for appellant.

Kenneth Rosengren, Phoenix, for appellees.

## OPINION

SCHROEDER, Judge.

This is an appeal from a judgment upon a jury verdict in a products liability case involving allegedly defective brakes. The major issue concerns whether the plaintiffs presented sufficient evidence to submit the question of the manufacturer's liability to the jury.

The case arises out of a head-on collision. One vehicle was occupied by plaintiffs-appellees, Joseph Chiarello and Lavinia Chiarello. The other vehicle, a Travelall manufactured by appellant, International Harvester Company, was driven by Bernes Sanderson. Plaintiffs instituted this action against International Harvester, Sanderson, and Powells International, Inc., a company which had performed work on the Travelall prior to the accident. The court entered a directed verdict in favor of Powells at the close of plaintiffs' case; the jury returned a verdict in favor of Sanderson and no appeals have been taken from these actions. The jury returned a verdict in favor of plaintiff Joseph Chiarello in the sum of $71,750, and in favor of plaintiff Lavinia Chiarello in the amount of $30,750 against International Harvester. International Harvester appeals.

The accident occurred in March of 1972. Mr. Sanderson was driving his Travelall in a westerly direction on Shea Boulevard, a two-lane road, at approximately 52 miles per hour, when an unidentified vehicle suddenly stopped in front of him, causing Sanderson to attempt an emergency stop. The Travelall veered to the left, into the path of oncoming traffic, and struck plaintiffs' car almost head-on, injuring both of the plaintiffs.

After the accident, the Travelall, at the request of Sanderson's insurance company, was removed to a body shop where it was inspected by Clarence "Lefty" Allen. Allen removed and disassembled the brake master cylinder, and testified that he observed "aluminum-like chips" in both the upper and lower chambers of the cylinder. At trial he testified that in his opinion, the presence of those chips in the master cylinder mechanism would cause loss of pressure to the braking system, resulting in the veering to the left experienced by Sanderson at the time of the accident. He was also of the opinion that, because of the size of the chips and their presence in both the upper and lower chambers of the cylinder, they could not have been introduced into the cylinder by the addition of brake fluid into the upper chamber. Another expert witness, who had not actually observed the chips, expressed similar opinions on direct examination.

The evidence further showed that at the time of the accident, the Travelall had been driven fewer than 7,000 miles and had been purchased new approximately five months before the accident. A few days after the purchase, Sanderson took the vehicle to Butch's Standard Service Station, at International Falls, Minnesota, to have an auxiliary trailer brake line installed. This operation involved the removal of one of the brake lines leading to the lower chamber of the master cylinder, the insertion of a T-connection for the auxiliary line, and then refilling the upper chamber of the master cylinder with brake fluid. Mr. Sanderson provided copper tubing which Butch's used to replace the brake line. This tubing proved deficient, however, and a few days later Sanderson took the vehicle back to the seller, Scubic Brothers, in Virginia, Minnesota, to have the copper tubing removed and replaced with steel flexline. This operation also necessitated tapping the lower chamber to add the flexline, and refilling lost fluid to the upper chamber.

While other mechanics and dealers apparently worked on the braking system at one time or another, the operations by Butch's and Scubic Brothers appear to have been the only work directly related to the master cylinder from the time of manufacture to the time of the accident.

Although at trial the question of the existence of the chips was hotly contested, the parties are now in agreement that the evidence on that score was sufficient to present the case to the jury, and that the actual dispute has been resolved by the jury's verdict.

The contentions in this appeal center upon the source of the chips, and relate principally to whether plaintiffs introduced sufficient, competent evidence on which the jury could base a conclusion that the chips were introduced during manufacture, rather than during subsequent work on the braking system performed by Scubic Brothers or Butch's.

■ Plaintiffs introduced no evidence concerning the precise techniques, equipment, brake fluid, or parts used by Butch's and Scubic Brothers. Plaintiffs' experts were permitted to testify generally concerning the manner in which an auxiliary trailer brake line is installed, and how removal of copper tubing and substitution of a flexline would be accomplished. In addition, the deposition of an employee of Scubic Brothers was read into the record and the deposition also described the nature of the work done by Scubic Brothers and Butch's.

Over appellant's objection, plaintiffs' experts were asked by plaintiffs' counsel a hypothetical question in which they were to assume that the work performed by Butch's and Scubic Brothers was "within the boundaries of ordinary, acceptable practices," and that it in essence was done by competent, qualified dealers using satisfactory equipment. Appellant contends that the hypotheticals were improper and require reversal because they assumed facts not in evidence, i.e., the competency and standard work of Butch's and Scubic Brothers.

■ We fully recognize that where experts' opinions are predicated on hypotheti-

cal situations, the facts assumed in the hypothetical must be supported by evidence before the court. *See* Udall, *Arizona Law of Evidence* § 24 (1960). Where an expert's opinion is predicated upon facts not in evidence, the opinion is improper evidence. *Alires v. Southern Pacific Company*, 93 Ariz. 97, 373 P.2d 913 (1963); *Carrizoza v. Zahn*, 21 Ariz.App. 94, 515 P.2d 1192 (1973).

In this case, there was no evidence concerning the competency and standard of work done by Scubic Brothers and Butch's. However, upon our careful review of the testimony of the two experts questioned, we conclude that their opinions were not based upon any facts improperly assumed in the question. The questioned assumptions were not material to the experts' opinions. A thorough reading of both experts' testimony demonstrates that they were knowledgeable as to the operations performed in installing an auxiliary trailer brake line. It was their opinion that regardless of the competency of the installer or the quality of the materials used, the installations performed by Butch's and Scubic Brothers would not have caused introduction of "aluminum-like" chips into the braking system. This is because, as Mr. Allen testified, the chips observed were in both chambers of the cylinder. As one of the experts specifically explained, this would not have occurred after manufacture unless the master brake cylinder was disassembled. No such disassembly occurred. We, therefore, find no reversible error in connection with the experts' testimony in response to the hypotheticals.[1]

■ Appellant's next contention is that even on the basis of all of the admitted evidence, International Harvester should have been granted a directed verdict because the plaintiffs failed to establish a prima facie case of strict liability in tort against the manufacturer.

Arizona has adopted the principle of strict liability as embodied in Restatement (Second) of Torts § 402A (1965). *See, e.g., Tucson Industries, Inc. v. Schwartz*, 108 Ariz. 464, 501 P.2d 936 (1972); *Reader v. General Motors Corp.*, 107 Ariz. 149, 483 P.2d 1388 (1971); *O. S. Stapley Company v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968). Although this principle is stated in terms of liability of the seller, the parties here agree that it is equally applicable in this case to the liability of the manufacturer. That section requires, among other things, that the plaintiffs establish a prima facie case that the product was defective when sold and that it reached the user "without substantial change in the condition in which it is sold."

Our courts have recognized that a plaintiff will seldom be able to produce a witness able to testify from personal knowledge that a product was defective when manufactured or sold, and that circumstantial evidence may be relied upon. *Reader v. General Motors Corp., supra; Bailey v. Montgomery Ward and Company,* 6 Ariz. App. 213, 431 P.2d 108 (1967). Our Supreme Court has stated that, "A reasonable inference that a product was sold in a defective condition may be created by evidence negating other causes of such condition for which the seller would not be responsible. See *Jakubowski v. Minnesota Mining and Manufacturing*, 42 N.J. 177, 199 A.2d 826 (1964)." *Reader v. General Motors Corp., supra,* 107 Ariz. at 155, 483 P.2d at 1394. *See also* Annot. 54 A.L.R.3d 1079, Products Liability—Existence of Defect.

*Reader* involved an improperly attached speedometer cable. There was evidence indicating that none of the services performed following sale of the vehicle required contact with the cable. The court held that the questions of whether the system *was improperly designed or whether*

---

1. It is conceivable, although not directly urged here, that the mere asking of a hypothetical question assuming facts not in evidence might be so misleading to the jury as to require reversal. We are aware of no cases reaching such a result. Moreover, in this case the questioned assumptions in the two hypothetical questions, considered in the context of all of the testimony of the experts, and of the entire lengthy trial, was inconsequential. The appellant does not contend that plaintiffs used such improper assumptions elsewhere in the record, and our review of key portions of the 12,000 pages of transcript amassed discloses no further reference to them.

the defect was the responsibility of the dealer prior to sale were for the jury. Other Arizona cases requiring the jury to resolve the issue of liability include *Davidson v. Wee*, 5 Ariz.App. 187, 424 P.2d 835 (1967); *Bailey v. Montgomery Ward and Company, supra.*

In *Jakubowski,* on the other hand, the evidence showed only that an abrasive disc had ruptured, that the possible causes of such rupture included not merely a manufacturing flaw but subsequent overuse by a third party, and there was no evidence that one cause was more probable than the other. The court held that the manufacturer was entitled to a directed verdict. *See also Klein v. Continental-Emsco,* 445 F.2d 629 (5th Cir. 1971), involving similar lack of evidence negating other and equally probable sources of a defect.

In this case, appellant argues that the plaintiffs failed to introduce evidence showing that the source of the chips was more probably during manufacture, as opposed to subsequent work by Scubic Brothers and Butch's. We disagree. Both of plaintiffs' experts testified that in their opinion the defect was more probably the responsibility of the manufacturer and explained their reasons. Although neither was familiar with the manufacturing process, both were familiar with the operations involved in subsequent repairs.

It is true that in cross-examination, the expert who had not actually seen the chips testified in response to hypothetical questions that it was "possible" that the chips were poured into one chamber when it was refilled and that the chips passed from that chamber to the other through the small ports. When asked whether that was "as possible as anything else you have testified about here so far today," he responded, "Yes." However, even assuming that this somewhat questionable admission on cross-examination was sufficient to nullify as a matter of law the entire probative value of that expert's testimony on direct examination, we are still left with the testimony of the other expert, who testified that he actually saw the chips and that they could not have passed through the ports. In ad-

dition, appellant's own expert admitted on cross-examination that he had found nothing to suggest that anything done by Butch's or Scubic Brothers caused the accident.

In evaluating whether the trial court erred in failing to direct the verdict in favor of International Harvester, the question which we must decide is whether there was sufficient evidence from which the jury could infer that the source of the chips was during manufacture. We conclude that there was. Doubtless the jury could have found otherwise, just as the jury could have concluded that the chips never existed. But the record in this case does contain evidence to support the jury's verdict of liability. In the last analysis, the case boils down to conflicting evidence. Neither side was entitled to a directed verdict and the resolution was properly left to the jury. *See O. S. Stapley Co. v. Miller, supra,* 103 Ariz. at 560, 447 P.2d at 252; *Davidson v. Wee, supra.*

■ Appellant further urges that the cause must be remanded for new trial on the basis of erroneously admitted testimony and the comments of counsel relating to loss of earning capacity. The trial court ruled early in the trial that loss of earning capacity was not to be considered. This ruling was based upon the answers given by plaintiffs to interrogatories. As a result, plaintiffs did not introduce statistical evidence relating to earning capacity, but there was reference both during testimony and during closing argument to the fact that Mrs. Chiarello ceased her work as a nurse in order to care for her husband. We believe that, in view of the court's ruling, these matters were improperly broached. However, appellant registered no objection to the references at the time of trial, and their admission is, therefore, not properly before us on appeal. *City of Tucson v. Wondergem,* 105 Ariz. 429, 466 P.2d 383 (1970); *Leigh v. Swartz,* 74 Ariz. 108, 245 P.2d 262 (1952); *Platt v. Greenwood,* 50 Ariz. 158, 69 P.2d 1032 (1937); *City of Tucson v. Farness,* 19 Ariz.App. 458, 508 P.2d 345 (1973), all re-

lating to failure to object to evidence during trial. *See also Rodriguez v. Williams,* 107 Ariz. 458, 489 P.2d 268 (1971); *Ahmed v. Collins,* 23 Ariz.App. 54, 530 P. 2d 900 (1975), relating to the failure to object to allegedly improper conduct of counsel.

■ Related also to the question of damages and earning capacity is appellant's objection to an instruction pertaining to longevity. This instruction, to which appellant took exception, provided:

"According to the 1968 Department of Health, Education, and Welfare Life Tables, the life expectancy of a man aged 66 years is 12 years. This is merely an estimate of the probable average remaining length of life of all persons of this age.

"This fact may be considered by you in arriving at the amount of damages for any permanent injury which you may find."

■ Appellant argues that this instruction was erroneous because it could only have been interpreted by the jury as relating to loss of earning capacity. We disagree. The instructions must be viewed as a whole. *Davis v. Burington,* 101 Ariz. 506, 421 P.2d 525 (1966). It is clear that the longevity instruction, particularly in the context of the other instructions, related not to loss of earning capacity, but to assessment of future pain and suffering. The court, without objection by appellant and preceding the longevity instruction, advised the jury that it was to consider "the pain, discomfort, suffering, disfigurement, disability and anxiety experienced and reasonably probably be experienced *in the future* as the result of the injury." (Emphasis added). We, therefore, conclude that the longevity instruction did not improperly inject the element of loss of earning capacity into the jury's deliberation. We note also that there was no claim of future suf-

fering or continuing injury on the part of Mrs. Chiarello and the jury was not instructed with respect to her longevity.

■ We must also reject appellant's contention that the jury's verdict was so excessive as necessarily to have resulted from passion and prejudice. While the verdict is large in comparison to the approximately $8,000 in special damages proved, we are unable to say that it is so excessively large as to shock the conscience. *See Standard Oil Co. v. Shields,* 58 Ariz. 239, 119 P.2d 116 (1941).[2]

■ Finally, appellant urges reversal on the ground of improper reference by plaintiffs to alleged design defects in the vehicle, particularly a reference to an article in Consumer Reports. Immediately upon the mention of the article, appellant moved for a mistrial pointing out that any Consumer Reports article dealt with a different model vehicle and a braking system different from that of the vehicle in question. The court denied the motion for mistrial, but fully admonished the jury to disregard the reference. Appellant urges that despite the admonition, the jury remained irreparably prejudiced.

In circumstances such as this, the trial court is given wide discretion in determining whether a mistrial should be declared. Upon our careful review of the record, we are unable to hold that the mere reference to a Consumer Reports article relating to Travelalls required declaration of a mistrial in this case.

We are acutely aware that the trial of this case was not free from distortion. The principal issue in this case from appellant's standpoint was whether the accident was caused by defective brakes attributable to the manufacturer, or whether it was due to driver error on the part of Mr. Sanderson. Both were defendants in the case. However, prior to trial, plaintiffs and defendant Sanderson entered into a form of

**2.** We find little significance in the fact that plaintiffs amend their complaint after trial to increase the ad damnum clause. The record reflects that the jury's verdict was well within the damages prayed for in the original complaint but which, in a manner which is

not entirely clear, were reduced at some point prior to trial. Our cases indicate that where a jury verdict exceeds the amount of the damages pleaded, the amendment of the complaint is appropriate. *Smith v. Tang,* 100 Ariz. 196, 202, 412 P.2d 697, 701 (1966).

covenant not to execute, whereby it was agreed that if the jury were to find both Sanderson and International Harvester liable, there would be no execution against Sanderson personally. The plaintiffs and Sanderson agreed that they would both cooperate in showing that the accident was caused by brake failure. As a result of this covenant, the appellant was left as the sole target defendant, and its chances to prevail were seriously diminished.

While recognizing that such covenants precipitate inequities and encourage deceptive practices, our courts have apparently condoned them and have upheld the rule against contribution by joint tortfeasors which gives rise to such covenants in the first place. *See Stroud v. Dorr-Oliver, Inc.,* 112 Ariz. 403, 542 P.2d 1102, 1108 (1975); *State Farm Mutual Insurance Co. v. Factory Mutual Insurance Co.,* 22 Ariz. App. 199, 526 P.2d 406 (1974); *Transcon Lines v. Barnes,* 17 Ariz.App. 428, 498 P. 2d 502 (1972). Appellant has not urged the covenant itself to be grounds for reversal. In these circumstances, and in the light of our resolution of the matters which have been raised by appellant, we must affirm the judgment below.

NELSON, J., concurs.

JACOBSON, Presiding Judge (dissenting):

I must respectfully dissent from that portion of the majority opinion dealing with the prejudicial effect of the hypothetical question propounded to plaintiffs' experts which ask them to assume facts not in evidence—that Butch's Service Station and Scubic Brothers were competent, did the work they performed properly, were reputable people and that they used only the best materials. I do agree that these "facts" were immaterial to the experts in reaching their conclusions and therefore agree with the majority that the opinions expressed by the experts were properly admitted.

Where our disagreement arises is in the prejudicial effect of such testimony, not on the experts, but on the jury who heard it.

The majority opinion, by a footnote, concludes that such an effect was "inconsequential". I disagree.

I believe both the majority and myself agree that the inclusion of these unproven statements in the hypothetical question was improper. In my opinion, facts in hypothetical questions serve the purpose of not only making competent the opinions of the experts based on these facts, but also serve the important subsidiary functions of placing before the jury facts upon which the hypothetical is based. In dealing with this subsidiary purpose, the Arizona Supreme Court has noted that:

"[T]he trial court must use its discretion to prevent the abuse of the hypothetical question, and should interfere to prevent questions framed in such a way or using only such facts as are either intended or likely to mislead the jury." *Decker v. Ramenofsky,* 91 Ariz. 97, 101, 370 P.2d 258, 260 (1962).

In my opinion, the use of the assumption by plaintiffs' counsel in this case was clearly intended to mislead the jury as to the only defense International had, and that is that it did not introduce the contaminants into the braking system—Butch's or Scubic Brothers did. International introduced evidence as to Bendix Corporation's method of manufacture, its checking procedures for cleanliness and that the "aluminum-like chips" could not have originated from this particular master cylinder. Plaintiffs' expert, Mr. Allen, agreed that he found no evidence in this master cylinder of chipping, scoring or gouging which would account for the presence of these chips.

The jury was thus left, in the last analysis, with the choice of whether the contaminants were introduced by International in assembly or by Butch's or Scubic Brothers in performing their operations. When the jury is told that both Butch's and Scubic Brothers were competent, did the work properly, were reputable people and used only the best materials, the jury's choices were narrowed considerably.

I do not believe any member of this Court, myself included, is able to say with any degree of certainty what evidence does or does not influence a jury's verdict. A particular fact may weigh heavily on one reasonable mind, but may seem inconsequential in another reasonable mind. A judge, then, when faced with improper evidence being presented to a group of reasonable minds, must make the difficult determination of whether, considering the testimony as a whole, those reasonable minds upon which the testimony may weigh heavily, would reach the same conclusion if the improper testimony had not been introduced. In making this determination, the judge naturally allows his own reaction to mirror the reaction of others.

Because of the closeness of the issue—where did the chips come from?—my reaction is that this improper testimony was material in the jurors' minds in determining this issue. Being, in my opinion, material, its introduction was prejudicial and regardless of whether these statements were material to the experts, its introduction requires reversal.

I would, therefore, reverse and remand for a new trial.