569 P.2d 1358

**Dewey Ray EHMAN, a minor, by his mother and guardian ad litem, Donna Ehman, Appellant and Cross Appellee,**

**v.**

**Billy RATHBUN and Marjorie Rathbun, husband and wife, Appellees and Cross Appellants.**

**No. 2 CA–CIV 2410.**

Court of Appeals of Arizona, Division 2.

June 2, 1977.

Rehearing Denied Aug. 19, 1977.

Review Denied Sept. 22, 1977.

**462**

Verity, Smith, Lacy, Allen & Kearns, P. C. by Bruce F. Rinaldi, Tucson, for appellant and cross appellee.

Kipps & Salter by Gordon S. Kipps, Tucson, for appellees and cross appellants.

## OPINION

RICHMOND, Judge.

Appellant, hereinafter plaintiff, was a passenger in a pickup truck that collided with a car driven by appellee Billy Rathbun, hereinafter defendant. The pickup truck was being driven by Russell Kosten, who also was a plaintiff in the court below. After a verdict and judgment awarding damages to both plaintiff and Kosten, and in favor of Kosten and against defendant on the latter's counterclaim, the trial court granted defendant's motion for new trial as against plaintiff on the issue of damages only. Plaintiff has appealed from that order, and defendant has perfected a cross appeal from so much of the order denying a new trial on all issues. There has been no appeal from the judgment in favor of Kosten.

In granting a new trial on damages the trial court concluded that an expert witness was permitted improperly to testify regarding plaintiff's future economic losses, which were based on the premise that he would be unable to work as a truck driver at a copper mine as a result of his accident injuries. The court specifically found that there was "insufficient foundational evidence" to substantiate the premise.

Although ordinarily the granting of a new trial is to a great extent discretionary with the trial court, *Cano v. Neill*, 12 Ariz.App. 562, 473 P.2d 487 (1970), this appeal involves no such discretion. The question is whether the record, contrary to the court's finding, reflects an evidentiary foundation for the witness's computation of damages.

Plaintiff relies on the testimony of three witnesses: Dr. Silver, the orthopedic surgeon who attended him; Dr. Johnson, a rehabilitation psychologist who administered vocational tests, and Dr. Buehler, the economist.

Dr. Silver testified that as a result of his injuries plaintiff had sustained a 20 to 25 per cent partial permanent disability of the right leg, which might preclude his working at hard labor in a copper mine "unless he was willing to assume the responsibilities that he could break his leg." He went on to state:

"I think he might hurt himself or hurt others if they depended on him in time of crisis. Some sudden twist or emergency movement to save himself or somebody else might cause him irreparable harm or loss of life."

On cross examination he characterized plaintiff's problems as mild.

Plaintiff was 15 at the time of the accident. He had dropped out of school in the eighth grade. Before the accident he had worked as a janitorial helper for his father's office maintenance company. Dr. Johnson, based on his testing, testified that with no physical disability plaintiff could have worked at a variety of jobs, including driving a truck. He also testified that if plaintiff "were unable to work in the mines because of his physical disability and his physical disability prevented that type of employment," his tests indicated it was possible to "re-train" him to work as a draftsman or television repairman.

Dr. Silver did not testify that plaintiff would be physically unable to work as a truck driver, and Dr. Johnson's opinion on "re-training" was based on projected inability "to work *in* the mines," not as a driver. However, Dr. Buehler, who computed fu-

ture economic loss from the difference between the wages paid a truck driver at the mines and those paid a draftsman or television repairman, was permitted to testify, over hearsay objection, as follows:

"Q. In your research in analyzing this situation, was there a step of employment or beginning part of employment with a majority of the mines other than truck driver?

"A. Yes. Most of the mines that I surveyed do not hire a truck driver directly. They hire an individual in as a laborer and if he is responsible, reliable and a good worker, then he can make application to become a truck driver, which people in the mines indicate a preferred job in terms of salary and working conditions."

From this, plaintiff argues that physical disqualification for hard labor would prevent him from ever qualifying as a truck driver.

■ Despite a developing trend to the contrary,[1] it is still the rule in Arizona that expert opinion may not be based on hearsay statements or information received by the witness outside the court. *Hemet Dodge v. Gryder*, 23 Ariz.App. 523, 534 P.2d 454 (1975); *Gilbert v. Quinet*, 91 Ariz. 29, 369 P.2d 267 (1962). It is true that the so-called "expertise" of the witness necessarily is based on hearsay in the course of his training and experience. The door is closed, however, to hearsay sources of information in acquiring factual knowledge of the specific subject on which he is to testify. 2 Jones on Evidence 639, § 14:21 (6th Ed. 1972).

Dr. Buehler was head of the economics department at the University of Arizona, and the jury was told that ". . . a part of the science of economics . . . can be used in making projections as to the effect of [an] injury on a person's earning capabilities" by the following means:

"Essentially, we treat the human being as an economic asset to determine what that individual could generate in economic benefits into the future and then to use a technique called discounting to bring the value of those future earnings, future monies that would be generated, to what is known as a present value; in other words, a sum of money that is payable today invested at a reasonable rate of interest would generate earnings or interest over the normal life of an individual, the normal working life of an individual such that he would have earned exactly what he would have earned if he had not been disabled."

■ Information regarding the hiring practices of prospective employers is not part of the economist's qualification to project future economic loss. It is as much a part of the facts with which he works as information about the prospective employee, which would have been subject to hearsay objection. *See Hemet Dodge v. Gryder*, supra. Thus, Dr. Buehler's testimony regarding "most of the mines that [he] surveyed"[2] did not supply the foundation for his computation of future economic losses. The latter testimony should have been excluded, and the trial court was correct in ordering a new trial.

■ We believe, however, that it was error to limit the new trial to the issue of damages. There was sufficient evidence from which a jury could legitimately conclude that plaintiff assumed the risk of the specific danger that caused his injuries.[3] Although the jury found in favor of Kosten

1. *See* Fed.R.Evid. 703, 705, 28 U.S.C.A.

2. Because defendant did not base his motion for new trial or cross appeal specifically on admission of the hearsay testimony, plaintiff claims its admission is not subject to appellate review, *Hays v. Richardson*, 95 Ariz. 64, 386 P.2d 791 (1963), modified on other grounds, 95 Ariz. 263, 389 P.2d 260 (1964), and that this court therefore must regard as competent the evidence of the mines' requirement. Defend-

ant's motion for new trial, however, was based primarily on the inadequate foundation for Dr. Buehler's testimony on future economic loss, and specifically in that regard on its hearsay basis.

3. Defendant testified he saw no lights on the pickup at the time of the accident. Several witnesses had seen it being operated without lights a short time earlier and a deputy sheriff, who had stopped it for that reason about a

as well as plaintiff on liability, and against defendant on his counterclaim, the verdict was not conclusive on the issue of assumption of risk.[4]

In *Tovrea Equipment Co. v. Gobby*, 72 Ariz. 38, 230 P.2d 512 (1951), the Arizona Supreme Court said:

". . . [A] new trial on the question of damages only will be granted when liability is not contested or has been clearly proved by the plaintiff so that the issues may be deemed separable; on the other hand when liability is contested and the issues are so inextricably entwined that a fair trial could not be given one of the parties on the issue of damages alone then a new trial will be ordered on all issues."

72 Ariz. at 42, 230 P.2d at 515.

Defendant on his cross appeal has questioned the exclusion of testimony that plaintiff's brother had made statements after arriving at the accident scene to the effect that he had warned Kosten and plaintiff not to drive the pickup truck until its lights and brakes had been fixed. The statements were properly excluded. They did not qualify as excited utterances, and the trial court correctly prevented defendant, after calling plaintiff's brother as a witness, from eliciting his denial of the statements in order to render them admissible through other witnesses for impeachment.

The order granting a new trial is modified by eliminating therefrom that portion limiting the issue to be retried to the amount of damages, and as modified is affirmed.

HOWARD, C. J., and HATHAWAY, J., concurring.

## ON MOTION FOR REHEARING

Appellant on motion for rehearing urges that this court's opinion filed June 2, 1977, is "directly contrary" to the holding in *State v. Clark*, 112 Ariz. 493, 543 P.2d 1122 (1975), which adopted the approach expressed in Rule 703, Federal Rules of Evidence, regarding the use of facts not in evidence as a basis for an expert's opinion. *Contra, International Harvester Company v. Chiarello*, 27 Ariz.App. 411, 555 P.2d 670 (1976). Inasmuch as the identical rule [1] has been promulgated by the Supreme Court of Arizona to take effect prior to any re-trial of this action, we supplement our opinion.

As a basis for an expert's opinion or inference, Rule 703 permits use of facts or data not admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, . . .." The importance of this limitation as a safeguard against the use and possible introduction of all sorts of otherwise inadmissible evidence was recognized by the supreme court in *Clark,* and by the State Bar Committee on the Rules of Evidence in its Note on Rule 703:

"This rule, along with others in this article, is designed to expedite the reception of expert testimony. Caution is urged in its use. * * * The question of wheth-

---

quarter of a mile from the accident scene, told Kosten and the plaintiff to leave the vehicle if they could not fix the lights. Kosten testified the lights went on when he changed a fuse; however, they were off when the vehicle came to rest after the accident and the switch was in the off position.

4. The jury was instructed, *inter alia* :

"If the defendant was negligent and the plaintiff Dewey Ehman voluntarily exposed himself to the specific danger which caused his injury which he knew about and understood, the plaintiff Dewey Ehman should not recover. This means that you must decide two things:

"1. Whether the plaintiff Dewey Ehman did assume the risk by voluntarily exposing himself to the specific danger which caused his

injury which he knew about and understood, and

"2. If the plaintiff Dewey Ehman did assume the risk, whether assumption of the risk should prevent a verdict in his favor."

1. Rule 703. Bases of Opinion Testimony by Experts

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

er the facts or data are of a type reasonably relied upon by experts is in all instances a question of law to be resolved by the court prior to the admission of the evidence. If the facts or data meet this standard and form the basis of admissible opinion evidence they become admissible under this rule for the limited purpose of disclosing the basis for the opinion unless they should be excluded pursuant to an applicable constitutional provision, statute, rule or decision.

"Evidence which is inadmissible except as it may qualify as being 'reasonably relied upon by experts in the particular field' has traditionally included such things as certain medical reports and comparable sales in condemnation actions."

The last quoted paragraph parallels the application of the Rule 703 approach in *Clark*. The issue there involved the admission in evidence of a psychiatrist's opinion based in part upon records and charts which were not in evidence. The court said:

"The use of charts of appellant's medical history by a psychiatrist engaged in an examination of appellant clearly falls within the category of information relied upon by psychiatrists." 112 Ariz. at 496, 543 P.2d at 1125.

■ The issue here is quite different. The trial court found it had improperly admitted an economist's opinion as to appellant's future economic losses because there was "insufficient foundational evidence", and ordered a new trial. The weak link in the foundational chain relied on by appellant was information the economist acquired from unidentified sources on hiring practices in "most of the mines that I surveyed." There was no evidentiary showing that the facts or data so acquired were "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject", although the economist testified:

"Q. Do you use certain recognized sources in your profession and field in compiling these figures?

"A. Yes.

"Q. Can you explain some of the sources you used in respect to Dewey Ray?

"A. On this particular case I did have an interview with Dewey and in addition I gained some information from Doctor Robert Johnson, vocational rehabilitation expert. Then I went to some published sources to determine wage rates for varying occupations in the Tucson area. These are put out by the Department of Economic Security of the State of Arizona."

Appellant and Doctor Johnson both testified at trial to the information they had made known to the expert. The wage rates published by the Department of Economic Security satisfy the Rule 703 test of facts and data reasonably relied upon by economists. For lack of a similar showing, however, the information in question was properly disregarded as "foundational evidence" by the trial court.

Motion for rehearing denied.

HOWARD, C. J. and HATHAWAY, J., concurring.