802 P.2d 1063

**Margaret TAMSEN and Dale Tamsen, husband and wife, Plaintiffs–Appellants,**

v.

**Dr. George WEBER, Defendant–Appellee.**

**No. 1 CA–CV 88–508.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 11, 1990.

Review Denied Jan. 8, 1991.

Treon, Strick, Lucia & Aguirre by Gerald J. Strick, JoJene E. Mills and Donald W. Harris, Phoenix, for plaintiffs-appellants.

Fish, Duffield, Miller, Young, Adamson & Alfred by Samuel D. Alfred, Tucson, for defendant-appellee.

## OPINION

LANKFORD, Judge.

Plaintiffs have appealed from a summary judgment and from the superior court's subsequent denial of their motion for new trial. The central issue presented is whether the defendant psychiatrist, Dr. George Weber, owed a duty to protect the plaintiff, Margaret Tamsen, from the violent acts of a person committed to the Arizona State Hospital, Kevin Trahan, who was in the care and custody of Dr. Weber. Because we hold that such a duty exists, we reverse the summary judgment, and remand for trial on whether Dr. Weber's conduct breached that duty and whether his breach caused harm to the plaintiffs.

We address the three issues presented in this appeal as follows:

1. If Dr. Weber knew of Trahan's dangerous propensities, did he have a duty to control Trahan so that he would not harm others?

2. Did the superior court properly grant summary judgment in the face of evidence of Trahan's dangerousness?

3. After the Tamsens discovered Trahan's medical records from the Arizona State Hospital, did the superior court abuse its discretion by denying the Tamsens' motion for a new trial based on newly discovered evidence?

## I.

On March 24, 1984, Kevin Trahan and another patient escaped from the Arizona State Hospital. The next day, they abducted a passer-by, appellant Margaret Tamsen, from the parking lot of another hospital. The escapees blindfolded Mrs. Tamsen, forced her at knife point to enter a vehicle, and drove her to south Phoenix. There, Trahan and the other patient severely beat Tamsen, held her head under water in an irrigation ditch, and left her for dead. Tamsen survived and made her way to a nearby house where she summoned help. The escapees were subsequently arrested in Tucson in Tamsen's car.

Trahan had been involuntarily committed to the Arizona State Hospital as a danger to himself. After being arrested in Flagstaff on theft charges, Trahan had attempted suicide twice while in jail and consequently was transferred to the Arizona State Hospital. While a patient there, he again attempted suicide. Trahan also was involved in an argument at the hospital in the course of which he kicked a staff member in the hand and wrist. Despite Trahan's history, Dr. Weber granted unsupervised grounds privileges to Trahan. It was during an unsupervised period on the hospital grounds that Trahan escaped.

Tamsen and her husband filed a suit in superior court naming various defendants, including appellee Dr. Weber. The Tamsens claim that Dr. Weber was or should have been aware of Trahan's violent tendencies, and therefore that Dr. Weber should have known that Trahan endangered others if he were not properly controlled.

Dr. Weber moved for summary judgment, arguing that he did not owe Tamsen any duty of care arising out of his psychiatrist-patient relationship with Trahan. Dr. Weber argued that because Trahan had made no specific threats directed towards Tamsen, she was not a foreseeable, readily identifiable victim.

The superior court denied Dr. Weber's motion. It found that Dr. Weber did have a duty to exercise reasonable care to control Trahan, and whether Dr. Weber had exercised a reasonable degree of control over Trahan under the circumstances was an unresolved issue of material fact.

Dr. Weber then filed a motion for reconsideration. The superior court denied the motion because it failed to set forth additional facts or new law which would warrant reconsideration of its ruling.

Dr. Weber filed a second motion for summary judgment on the same day he filed his motion for reconsideration. The superior court granted this motion for summary judgment. Dr. Weber acknowledged for the sake of arguing this motion that he should have exercised reasonable care to control Trahan *if* he knew or should have known that Trahan was likely to cause bodily harm to others. But Dr. Weber argued that there were no facts from which the trier of fact could infer that he knew or should have known of Trahan's dangerousness. Because the Tamsens presented no controverting affidavits, the court found that no genuine issue of material fact existed and granted summary judgment.

■ After entry of a written judgment against them, the Tamsens timely moved for a new trial based on recently obtained records relating to Trahan's hospitalization at the Arizona State Hospital. They argued that these records clearly revealed Trahan's tendency to commit violent acts. The Tamsens contended that the records were newly discovered evidence entitling them to a new trial under Rule 59(a)(4),

Arizona Rules of Civil Procedure.[1] The superior court denied the Tamsens' motion for a new trial without explanation. This appeal followed.

## II.

We first consider whether Dr. Weber had a duty to control Trahan so that he would not inflict harm on others. Unless such a duty exists, any newly discovered evidence in support of the Tamsens' motion for a new trial would be irrelevant.

 To recover in a negligence case, the plaintiff must show that a legal duty exists, that the defendant breached that duty, and that an injury resulted from that breach. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). The question whether the defendant owes a duty to a plaintiff is one of law to be decided by the court. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985); *Beach v. City of Phoenix*, 136 Ariz. 601, 604, 667 P.2d 1316, 1319 (1983).

Generally, the common law imposes no duty to control the actions of another. *Cooke v. Berlin*, 153 Ariz. 220, 735 P.2d 830 (App.1987). However, exceptions to the general rule do exist. The *Restatement (Second) of Torts* § 315 (1965) sets forth the exception which applies to this case.

> There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct ...

Comment c of § 315 states that §§ 316–319 set forth the circumstances under which an actor is required to control a third person's conduct. Section 319 provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third per-

son to prevent him from doing such harm.

Arizona has previously followed the rule of § 319. In *Grimm v. Arizona Bd. of Pardons & Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977), the supreme court applied § 319 and held that the Arizona Board of Pardons and Paroles owes a duty to individual members of the public when deciding whether to release a dangerous prisoner. The court reasoned that the Board's liability arose from the negligent performance of the duty because of its grave risk of harm in such situations. 115 Ariz. at 267, 564 P.2d at 1234.

 No reported Arizona decision has applied *Restatement (Second) of Torts* § 319 to a psychiatrist's duty to control an involuntarily committed patient with known dangerous propensities. However, Arizona courts follow the *Restatement (Second) of Torts* in the absence of Arizona authority to the contrary. *Jesik v. Maricopa County Community College Dist.*, 125 Ariz. 543, 611 P.2d 547 (1980); *Aztlan Lodge No. 1, Free and Accepted Masons of Prescott v. Ruffner*, 155 Ariz. 163, 745 P.2d 611 (App.1987); *Koepke v. Carter Hawley Hale Stores, Inc.*, 140 Ariz. 420, 682 P.2d 425 (App.1984). The potential for grave physical harm mandates that a psychiatrist who undertakes to care for an involuntarily committed patient with known or reasonably discernable dangerous propensities must exercise due care or be held liable for the consequences.

Dr. Weber was, in the words of the *Restatement*, "in charge of" Trahan's freedom of movement at the Arizona State Hospital. Indeed, Dr. Weber had the discretion to, and did, grant Trahan unsupervised grounds privileges.

Dr. Weber argues that *Hamman v. County of Maricopa*, 161 Ariz. 58, 775 P.2d 1122 (1989), holds that a psychiatrist's duty extends only to victims who are "reasonably foreseeable," i.e., those whom the psychiatrist can reasonably predict might be attacked by an uncontrolled patient. Dr. Weber acknowledges that a specific

---

**1.** A motion for a new trial is an appropriate vehicle to seek to set aside a summary judg-

ment. *Maganas v. Northroup*, 112 Ariz. 46, 537 P.2d 595 (1975).

threat to the victim is not required for foreseeability, and thus is not required for a duty to exist. However, Dr. Weber argues that the victim must be in a reasonably foreseeable "zone of danger." According to Dr. Weber, because Trahan randomly selected Margaret Tamsen as his victim, she cannot be a foreseeable victim.

The decision in *Hamman* does not control the outcome of this case. *Hamman* did not rely on *Restatement* § 319 and did not involve a psychiatrist "in charge of" a committed patient. *Hamman* instead involved a psychiatrist treating an outpatient who had freedom of movement. The scope of the duty imposed in such a case necessarily differs from that which applies to a psychiatrist whose patient has been involuntarily committed. An involuntarily committed patient is within the physician's physical control. In contrast, a psychiatrist cannot monitor and control an outpatient's interaction with the public. A psychiatrist's duty to protect the public from an outpatient is therefore limited to identifiable potential victims whom he can warn.

A psychiatrist can control the involuntarily committed patient, however, and can by the prudent exercise of such control protect the public from the patient's dangerous propensities. If Dr. Weber knew or should have known of Trahan's dangerous propensities, then Dr. Weber had a duty to act with due care to protect others by controlling Trahan.

### III.

We now turn to the propriety of the entry of summary judgment. When reviewing the granting of a summary judgment, we consider the evidence in the light most favorable to the party against whom summary judgment was taken. *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 725 P.2d 727 (App.1986).

The superior court properly grants summary judgment only when the record reflects no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ariz.R.Civ.P. The moving party has the burden of demonstrating that she or he is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 When a moving party makes a *prima facie* showing that there is no genuine issue of material fact, the opposing party has the burden to produce sufficient evidence that there is indeed a triable issue. *Dobson v. Grand Int'l Brotherhood of Locomotive Eng'rs*, 101 Ariz. 501, 421 P.2d 520 (1966). If the facts set forth in support of a motion for summary judgment are not controverted by the opposing party, then those facts are presumed to be true. *Watts v. Hogan*, 111 Ariz. 536, 534 P.2d 741 (1975). Dr. Weber supported his second motion with his own affidavit that he was unaware of Trahan's dangerous propensities.

 The Tamsens did not provide affidavits or other evidence to rebut Dr. Weber's affidavit. The Tamsens responded to Dr. Weber's motion by merely alleging that Dr. Weber knew about an assault by Trahan on an Arizona State Hospital employee. When a summary judgment movant makes a *prima facie* motion, the opponent cannot defeat the motion merely by asserting facts in a memorandum or brief. *Cimino v. Alway*, 18 Ariz.App. 271, 501 P.2d 447 (1972). The Tamsens' allegations standing alone were insufficient to prevent summary judgment.

The Tamsens also argued that a copy of hospital records revealing violent acts by Trahan had been attached to the Tamsens' responses to the first summary judgment motion, and were by reference incorporated into the Tamsens' response. However, there were no such hospital records attached to the previous responses.

Dr. Weber attached to his reply the incident reports from the Arizona State Hospital which he thought the Tamsens had referred to in their response. However, Dr. Weber argued that the incident reports should not be considered for purposes of summary judgment because they contained inadmissible hearsay. Dr. Weber himself did not lay the foundation for the admis-

sion of these records under the business records exception to the hearsay rule.[2]

The Tamsens did not controvert Dr. Weber's motion for summary judgment with affidavits or other evidence showing a genuine issue of material fact. Therefore, the superior court properly granted Dr. Weber's motion for summary judgment.

### IV.

Finally, we consider whether the superior court abused its discretion in denying the Tamsens' motion for a new trial based on newly discovered medical records from the Arizona State Hospital. These records are crucial to the Tamsens' claim because a jury could reasonably infer that the records revealed Trahan's dangerous propensities to Dr. Weber.

The granting of a new trial is discretionary with the trial court. *City of Glendale v. Bradshaw*, 114 Ariz. 236, 560 P.2d 420 (1977); *Wendling v. Southwest Sav. & Loan Ass'n*, 143 Ariz. 599, 602, 694 P.2d 1213, 1216 (App.1984); *Ehman v. Rathbun*, 116 Ariz. 460, 569 P.2d 1358 (App. 1977). Absent an abuse of this discretion, the trial court's ruling will not be disturbed. *Wendling, supra; Erickson v. Waller*, 116 Ariz. 476, 569 P.2d 1374 (App. 1977).

However, a new trial is warranted by newly discovered evidence which would have precluded summary judgment. According to Rule 59(a), Ariz.R.Civ.P.:

> A verdict, decision or judgment may be vacated and a new trial granted on motion of the aggrieved party for any of the following causes materially affecting that party's rights:
>
> . . . . .
>
> 4. Material evidence, newly discovered, which with reasonable diligence could not have been discovered and produced at the trial.

For a new trial to be warranted by newly discovered evidence, "it must appear that the evidence could not have been discover-

ed before trial by the exercise of due diligence and that the evidence would probably change the result upon retrial." *Wendling,* 143 Ariz. at 602, 694 P.2d at 1216. The newly discovered evidence must also have been in existence at the time of the trial. *Id.*

The last requirement, that the evidence existed at the time of the summary judgment, is clearly met in this case. The hospital records were created long before the motion was made and judgment was entered in this case.

As to the requirement of due diligence, Dr. Weber first argues that the Tamsens did not use due diligence. Trahan refused to consent to the release of his records. Dr. Weber argues, however, that the Tamsens should have deposed Trahan as part of the effort to obtain his consent. Additionally, Dr. Weber alleges that the Tamsens had the information found in the Arizona State Hospital records prior to their release.

Arizona cases provide little guidance on what constitutes due diligence in support of a motion for a new trial because of newly discovered evidence. Certainly, a party fails to employ due diligence if she does not make any reasonable effort to obtain critical evidence, believing that evidence to be unnecessary. *Chambers v. Taber*, 21 Ariz. App. 291, 518 P.2d 1008 (1974). Additionally, a plaintiff who attempts to discover evidence from only one source, when several are available, does not exercise due diligence. *Schneider v. City of Phoenix*, 9 Ariz.App. 356, 452 P.2d 521 (1969). An application for a new trial will be denied where it appears that the degree of activity or diligence which led to the discovery of the evidence after trial would have produced it had diligence been exercised before trial. *United States v. Bransen*, 142 F.2d 232 (9th Cir.1944); *Ursini v. Menninger Foundation*, 384 F.Supp. 158 (E.D.Cal. 1974). It thus appears that lack of diligence is more readily defined and recognized than is due diligence.

---

**2.** However, these records were later admissible for purposes of the motion for new trial because the Tamsens attached an affidavit of the custodi-

an of hospital records which established the elements of the business records exception to the hearsay rule. *See* Rule 803(6), Ariz.R.Evid.

The Tamsens argue that they exercised ample diligence in securing the hospital records. After the Tamsens filed their complaint on February 6, 1986, they made numerous attempts to obtain Trahan's Arizona State Hospital records.

A criminal prosecution of Trahan initially stymied the Tamsens' efforts to secure Trahan's consent to waive the physician-patient privilege[3] which barred discovery of the hospital records. Before and during sentencing in the criminal case, Trahan's defense attorney refused to allow the Tamsens to consult Trahan.

After Trahan had been sentenced, the Tamsens' counsel did not contact Trahan immediately because at that time the Tamsens had filed an application for default judgment against Trahan in this civil action. The Tamsens' counsel felt it would be improper to directly contact Trahan, an unrepresented adverse party. A default judgment against Trahan was not granted until July 10, 1987.

After entry of the default judgment, the Tamsens' counsel again attempted to contact Trahan to obtain his waiver of the physician-patient privilege. But Trahan was being classified for assignment within the prison system, and the Department of Corrections would not permit the Tamsens' attorney to speak with Trahan because of his mental condition. Trahan had attempted suicide in the Maricopa County Jail, resulting in brain damage. The prison authorities told Tamsens' counsel that they did not know whether Trahan was competent to speak with him.

The Tamsens then attempted to obtain the release of Trahan's medical records directly from the state. However, the attorney general's office refused to release the medical records without the patient's prior consent.

On July 29, 1987, the Tamsens filed a motion to compel the State of Arizona to produce all documents regarding Trahan's stay at the Arizona State Hospital. The state responded that it could not waive Trahan's physician-patient privilege for him. The court then ordered that the state produce only those parts of Trahan's records not protected by the physician-patient privilege.

Meanwhile, Dr. Weber filed his first motion for summary judgment. The Tamsens opposed this motion, and requested a continuance so as to complete the discovery necessary to oppose the motion. See Rule 56(f), Ariz.R.Civ.P. The Tamsens' attorney also submitted an affidavit in support of their request.

At the same time they responded to Dr. Weber's motion, the Tamsens again moved for an order to compel discovery of the hospital records. The state responded that it had not had sufficient time to examine the records to determine which information was protected by the physician-patient privilege. The state told the Tamsens that it would not be able to fully review the records for disclosure before November 13, 1987. The state then asked the court to conduct an *in camera* inspection of the hospital records. The state said it was unable to distinguish the privileged information from unprotected information.

The court then inspected the medical records *in camera* and decided that the privilege encompassed most of the 315 pages of records. The court also found that the unprotected portions were neither relevant nor would they lead to admissible evidence. Therefore, the court did not allow discovery of any of the medical records.

Finally, in April 1988, Trahan agreed to speak with the Tamsens' attorney, and the Department of Corrections consented to the meeting. Trahan then signed a release for his medical records.

The superior court finally ordered the release of Trahan's medical records from the Arizona State Hospital. The order was entered on May 2, 1988, but the records were not actually released by the custodian of medical records until May 13. However, the court had already granted Dr. Weber's second motion for summary judgment against the Tamsens on April 25, 1988.

The Tamsens gave the Arizona State Hospital records to a psychiatrist whom

3. *See* A.R.S. §§ 12–2235, 13–4062.

they had retained as an expert witness, Robert J. Ranucci, M.D. Dr. Ranucci reviewed the records and signed an affidavit stating that, based upon his review, Dr. Weber should have known that Trahan was likely to cause bodily harm to others if not controlled. The Tamsens attached the hospital records to their motion for new trial and attached Dr. Ranucci's affidavit to their reply in support of their motion ·for new trial.

■ In our opinion, the record clearly indicates that the Tamsens exercised due diligence in attempting to obtain the records. They repeatedly attempted to obtain the records by all reasonable methods. Because of the criminal charges against Trahan, his position as an adverse party in the Tamsens' civil case and the existence of the physician-patient privilege, the Tamsens' considerable efforts to obtain the records were blocked at every avenue of approach to their discovery.

■ Dr. Weber further argues that because the Tamsens had possession of the information contained in the Arizona State Hospital records before judgment was entered, they are not entitled to a new trial. While it is true that the Tamsens had discovered some of the information contained in the Arizona State Hospital records through other discovery sources, they lacked the records. The records were crucial because they reflected Dr. Weber's knowledge or opportunity for knowledge of Trahan's dangerous propensities. Dr. Weber's duty depends directly on whether he had such knowledge or opportunity. Without the Arizona State Hospital records, the Tamsens knew only that Trahan had a violent history, but lacked the evidence to controvert Dr. Weber's affidavit stating that he did not know of Trahan's past acts of violence. The Arizona State Hospital records provide a version of the extent of Dr. Weber's knowledge, or of information reasonably available to him, which conflicts with what Dr. Weber stated in his affidavit.

We conclude that the Tamsens' efforts constitute sufficient diligence in attempting to procure the evidence. They met the second prerequisite to a new trial based on newly discovered evidence.

This brings us to the final element of the newly discovered evidence analysis: would the outcome of this case have been different had the records been presented to the trial court prior to its ruling on Dr. Weber's second motion for summary judgment? In our opinion, the summary judgment would not have been granted in the face of this evidence. The evidence therefore would have changed the outcome.

Dr. Weber's second motion for summary judgment argued that no evidence supported an inference that he knew or should have known that Trahan had a tendency to violence. His own affidavit denied such knowledge.

In its minute entry, the superior court rested its order granting the summary judgment on the plaintiffs' failure to present any evidence refuting Weber's position, and on the consequent absence of a genuine issue of material fact.

However, the Arizona State Hospital records—records from which it could be inferred that Dr. Weber either reviewed or should have reviewed—were replete with information reflecting Trahan's violent and dangerous tendencies.

At the time of his admission into the hospital, Trahan was diagnosed as suffering major depression recurrent with psychotic features. Medical providers who treated Trahan repeatedly referred to their short term goals as "remission from depression, suicidal acts and *homicidal ideation*." (Emphasis added). In blunt terms, Trahan was thinking about killing people.

After Trahan had escaped, Dr. Weber wrote in an exit summary that "Trahan's primary complaint is a persistent feeling of anger and depression coexisting simultaneously" and that Trahan "expresses a very definitive and strong feeling of animosity, anger, and homicidal intent toward his parents." Dr. Weber also noted that Trahan was "independent, angry and depressive as evidenced by suicide attempts" and that he "seems to be an independent, negative, moody, changeable, dissatisfied,

opinionated, restless and unstable personality [and] clinically hostile, irritable, immature and manipulative ..." These records portray a seriously disturbed individual, who had been hospitalized numerous times since childhood for mental disorders.

The records contain many reports of Trahan's violence. Nursing assessment notes indicated that Trahan had shot three men six years earlier, allegedly in self-defense, and had made numerous suicide attempts. The records also show that he had assaulted a patient and a member of the staff at the Arizona State Hospital. His suicidal tendencies arguably reflect a person who places no value on his own life and thus may have little concern about the safety of others. Certainly, such a conclusion is suggested when Trahan's suicide attempts are coupled with his expressed anger and hostility toward others, or with his history of violence before entering the Arizona State Hospital, or with the acts of violence which he committed while at that hospital.

Based on the records alone, a jury might reasonably infer that Dr. Weber knew or should have known that if Trahan escaped, he would pose a danger to others. Moreover, the plaintiffs' expert, Dr. Ranucci, testified that in light of these records Dr. Weber should have known Trahan might cause bodily injury to others if not properly controlled. In light of this evidence, summary judgment would have been inappropriate. The outcome of this case might have been different had Trahan's records from the Arizona State Hospital been considered. Each of the three prerequisites for a new trial based on newly discovered evidence has been met. We conclude that the superior court abused its discretion by denying a new trial and entering a summary judgment and barring the plaintiffs from presenting their claim to a jury.

## V.

A physician owes a duty to protect others by controlling an involuntarily committed patient with known or reasonably discernable dangerous propensities who is in the physician's care and custody. The newly discovered evidence in this case, the Arizona State Hospital records, support a reasonable inference that Dr. Weber knew or should have known that Trahan was dangerous. Of course, one issue which remains to be decided by the jury is whether Dr. Weber breached his duty of due care by granting unsupervised grounds privileges to Trahan.

For the foregoing reasons, we reverse the superior court's denial of the Tamsens' motion for a new trial and vacate the summary judgment. The case is remanded to the superior court for further proceedings consistent with this opinion.

BROOKS and TAYLOR, JJ., concur.