671 P.2d 427

**Arnulfo HERNANDEZ and Isabel Hernandez, husband and wife, Plaintiffs/Appellants,**

v.

**Rod Raymond FAKER and Victor R. Ruiz, Defendants/Appellees.**

No. 2 CA–CIV 4705.

Court of Appeals of Arizona, Division 2.

Oct. 18, 1983.

**450**

Russo, Cox, Dickerson, Butler & Russo, P.C. by Karl MacOmber, Tucson, for plaintiffs/appellants.

Fish, Briney, Duffield, Miller, Young & Adamson, P.C. by Samuel D. Alfred, Tucson, for defendant/appellee Faker.

Leonard Everett, Tucson, for defendant/appellee Ruiz.

## OPINION

BIRDSALL, Judge.

This appeal arises out of a personal injury complaint. The jury awarded the plaintiffs/appellants $10 damages from the defendant Ruiz and $40 from the defendant Faker for injuries to plaintiff Isabel Hernandez. Her injuries were claimed to result from rear-end collisions involving both defendants on March 26, 1980. The trial court denied the appellants' motion for additur and new trial. We affirm.

The only question presented on appeal is the admission in evidence through the direct examination of an expert doctor witness of hearsay contained in the report of another doctor who did not testify. The records of the other doctor were relied on by the witness in arriving at the expert opinions which he expressed. The appellee contends this was material which the witness was entitled to consider under Rule 703, Rules of Evidence, 17A A.R.S. This rule provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at our before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

The medical expert witness, Dr. Frankel, who examined Isabel on November 13, 1981, for the defendant/appellee Ruiz, testified generally that he found nothing wrong with her. After expressing his opinion that she could do her normal work as a restaurant cook, he was asked if he had found in the records furnished him a report signed by a Dr. Lapp who had previously treated Isabel containing a statement that five days *before* the accident she was totally disabled.[1] The appellants' counsel objected that the question was leading and hearsay. The trial court inquired "How do you answer the hearsay objection" and an unreported bench conference followed. The court then overruled the objection and the witness was permitted to testify to some of the contents of Dr. Lapp's records. A later mistrial motion was denied. The records were also admitted in evidence, but later withdrawn by the appellees with the court's permission. In *Zier v. Shamrock Dairy of Phoenix, Inc.,* 4 Ariz.App. 382, 420 P.2d 954 (1967), Division One said:

"Reports of expert findings which are sought to be introduced in evidence as bases of opinion of a testifying medical expert are hearsay and are inadmissible. *Security Benefit Assn. v. Small,* 34 Ariz. 458, 272 P. 647 (1928); *Middleton v. Green,* 35 Ariz. 205, 276 P. 322 (1929); *Bogard GMC Co. v. Henley,* 2 Ariz.App. 223, 407 P.2d 412 (1965). Dr. Eisenbeiss and Dr. Kelley were not available for cross-examination during the trial. Their reports are hearsay." 4 Ariz.App. at 383, 420 P.2d 954.

The opinion, however, goes on to hold that since the use of the reports arose on cross-examination, their admission was proper. *Zier* was decided before our adoption of the Federal Rules of Evidence and therefore the court did not consider Rule 703. No reported Arizona case has considered this exact question since then, although some

---

1. This disability, if any, apparently resulted from an earlier rear-end collision not involving either appellee.

have considered the rule. See *State v. Rupp,* 120 Ariz. 490, 586 P.2d 1302 (App. 1978), citing *State v. Clark,* 112 Ariz. 493, 543 P.2d 1122 (1975), a pre-rule case.

Assuming arguendo the evidence introduced qualified as "facts or data" then it was admissible for the limited purpose of showing some of the basis for the opinion of the expert witness. We hold, contrary to *Zier,* that the testimony may be elicited on the direct examination of the witness.

The comment to Rule 703 contains the statement, "If the facts or data meet this standard and form the basis of admissible opinion evidence they become admissible under this rule for the limited purpose of disclosing the basis for the opinion unless they should be excluded pursuant to an applicable constitutional provision, statute, rule or decision. It also states, "Evidence which is inadmissible except as it may qualify as being 'reasonably relied upon by experts in the particular field' has traditionally included some things as certain medical reports and comparable sales in condemnation actions." Despite this comment there is no Arizona opinion directly holding facts or data properly relied on by a medical expert witness to be admissible in the direct examination of that witness. *City of Scottsdale v. Eller Outdoor Advertising,* 119 Ariz. 86, 579 P.2d 590 (App.1978), is, however, directly in point if a comparison with condemnation case damage law is valid. In *City of Scottsdale,* Division One of this court found the exclusion of evidence showing comparable sales of billboard companies was reversible error. The opinion holds that evidence of comparable sales offered as a factor in allowing an expert to determine a capitalization rate for the property was admissible. Division One also quoted with approval from *City of Renton v. Scott Pacific Terminal, Inc.,* 9 Wash.App. 364, 512 P.2d 1137 (1973), which quoted from an earlier Washington case holding in part:

"We now hold that, when a expert is allowed to testify to a valuation opinion which is in part based on facts which would normally be hearsay and inadmissible as independent evidence, the trial court may in its discretion allow the ex-

pert to state such facts for the purpose of showing the basis of the opinion. The exclusion of such evidence, however, must be based on a sound exercise of discretion and not on an erroneous application of the hearsay and best evidence rules." 119 Ariz. at 96, 579 P.2d 590.

Judge Jacobson, writing for Division One, went on to note that the evidence "... may well fall within the category of 'a type reasonably relied upon' as set forth in Rule 703 ..." We see no valid reason for admitting evidence of comparable sales in condemnation and not admitting facts upon which other experts rely in forming their opinion provided they are shown to be of the type reasonably relied upon by experts in that particular subject.

The introductory note to Article VII, Opinions and Expert Testimony, Rules of Evidence, 17A A.R.S., contains this comment:

"The rules in this article are designed to avoid unnecessary restrictions concerning the admissibility of opinion evidence; however, as this note makes clear, an adverse attorney may by timely objection, invoke the court's power to require that before admission of an opinion there be a showing of the traditional evidentiary prerequisites. Generally, it is not intended that evidence which would have been inadmissible under pre-existing law should now become admissible.

A major objective of these rules is to eliminate or sharply reduce the use of hypothetical questions. With these rules, hypothetical questions should seldom be needed and the court will be expected to exercise its discretion to curtail the use of hypothetical questions as inappropriate and premature jury summations. Ordinarily, a qualified expert witness can be asked whether he has an opinion on a particular subject and then what that opinion is. If an objection is made and the court determines that the witness should disclose the underlying facts or data before giving the opinion, the witness should identify the facts or data necessary to the opinion.

In jury trials, if there is an objection and if facts or data upon which opinions are to be based have not been admitted in evidence at the time the opinion is offered, the court may admit the opinion subject to later admission of the underlying facts or data; however, the court will be expected to exercise its discretion so as to prevent the admission of such opinions if there is any serious question concerning the admissibility, under Rule 703 or otherwise, of the underlying facts or data."

Despite the clarity of the holding in *Scottsdale,* the opinions concerning other expert testimony which is based in part on matters not otherwise in evidence are not as succinct. See *State v. Rupp,* 120 Ariz. 490, 586 P.2d 1302 (App.1978); *Ehman v. Rathbun,* 116 Ariz. 460, 569 P.2d 1358 (App.1977). These cases, *Rupp* and *Ehman,* lend only partial support to our holding since neither directly decided a similar issue. *Rupp* involved the admission of a series of slides showing tissue taken from various organs of a homicide victim. The slides were prepared by laboratory personnel at the direction of the expert witness and in that preparation the tissue might have been altered. Also, since only the doctor testified, there was a foundational question whether the slides were from the victim's body. The opinion disposes of these two questions with the following paragraph:

"If there was error in admitting the slides into evidence the error was harmless. The essential function of the slides was to provide a portion of the factual basis for Dr. Jarvis's expert testimony. Arizona now follows the rule that if supportive factual material is of a type reasonably relied upon by experts in the formation of opinions, the material itself need not be admitted into evidence. *State v. Clark,* 112 Ariz. 493, 543 P.2d 1122 (1975). See also Rule 703, Rules of Evidence, 17A A.R.S. From the record adduced, the slides in issue here consist of such material. The slides were prepared for the use of the expert. They are obviously not discernible by a layman and there is no suggestion that they could

have been intelligently used or perceived by the jury prejudicially to appellant. There was accordingly no reversible error." 120 Ariz. at 498, 586 P.2d 1302.

In *Ehman* in the supplement to our opinion on motion for rehearing, we recognized that Rule 703 had been promulgated in Arizona but was not yet in effect. We discussed *State v. Clark,* supra, and quoted the comment by the State Bar Committee on the Rules of Evidence:

"This rule, along with others in this article, is designed to expedite the reception of expert testimony. Caution is urged in its use.... The question of whether the facts or data are of a type reasonably relied upon by experts is in all instances a question of law to be resolved by the court prior to the admission of the evidence. If the facts or data meet this standard and form the basis of admissible opinion evidence they become admissible under this rule for the limited purpose of disclosing the basis for the opinion unless they should be excluded pursuant to an applicable constitutional provision, statute, rule or decision.

Evidence which is inadmissible except as it may qualify as being 'reasonably relied upon by experts in the particular field' has traditionally included such things as certain medical reports and comparable sales in condemnation actions."

However, in *Ehman* the information upon which the economist expert relied was never shown to be of the type reasonably relied upon by experts in his field. For that reason it was held error to admit the opinion and the court does not reach the question of the admissibility of the facts or data upon which the economist relied.

A third Arizona opinion which may, at first, appear to be even more in point is *Continental Bank v. Wa-Ho Truck Brokerage,* 122 Ariz. 414, 595 P.2d 206 (App.1979). That case involved the bank's handling of checks with unauthorized signatures. The depositors were awarded summary judgment in the trial court. This judgment was reversed on appeal, one of the reasons being that material issues of fact were in dispute.

One fact was whether the bank's conduct was in accordance with reasonable commercial standards. The bank had filed affidavits of banking experts whose conclusions support the bank's position. The affidavits were attacked by the depositors as insufficient under Rule 56(e), Rules of Civil Procedure, 16 A.R.S., which requires that such affidavits contain "specific facts" which would be admissible at trial. The opinion notes that the affidavits are from experts and, citing Rules 703, 704 and 705, would be admissible even if the facts or data was not. There is likewise a dearth of reported decisions outside of Arizona or in the federal courts which are directly in point. See Weinstein's Evidence, Vol. 3, § 703(03)–(05).

An opinion which supports our holding is *Roberts v. Tardif,* 417 A.2d 444 (Me.1980). There the doctor witness was permitted to testify what was meant by certain notations on a report of an examination of an x-ray. The opinion finds no error but the only authority cited in support are Rules 703 and 705 (both identical with Arizona) and the "Adviser's Note" to Rule 705 stating that Rule 705 "permits the expert to disclose the underlying facts or data on direct examination even though facts not admissible in evidence may be included." 417 A.2d at 450. That express language does not appear in Rule 705 although it does logically follow. There is also contrary authority. See *Commonwealth v. Kendall,* 9 Mass.App. 152, 399 N.E.2d 1115 (1980). In that criminal case the court reversed the conviction because the prosecution expert witness was permitted to testify to inadmissible, prejudicial hearsay. The opinion contains the following reasoning:

"... It is well settled that while an expert witness may consider as the basis for his opinion, this does not make the hearsay itself admissible. Put another way, an expert 'may not, under the guise of stating the reasons for his opinion, testify to matters in the course of his direct examination unless such matters are admissible under some statutory or other recognized exception to the hearsay rule.'" 399 N.E.2d at 1118.

We do not find *Kendall* persuasive here. The hearsay involved there included statements of the defendant's wife to the effect that the defendant's psychiatrist had a bizarre and unprofessional relationship with the defendant; that the psychiatrist had perverted sexual attitudes; that the defendant had been arrested for serious offenses at least 50 times but each time Dr. Smith, the psychiatrist, had concocted false insanity defenses. Obviously this hearsay, related by another psychiatrist from what the wife told him, was "inadmissible under any recognized exception to the hearsay rule."

■ We hold that an expert witness may testify on direct examination as to the basis for his opinion if the facts and data are of a type reasonably relied upon by experts in that field.

■ We must next determine if the statement in Dr. Lapp's report to the effect that the plaintiff was totally disabled on March 21 was within the "facts or data" contemplated by the rule. We believe it was. There was no additional testimony explaining the statement. In the absence of any explanation to the contrary, the statement that one was "totally disabled" can be a fact. To hold otherwise would render inadmissible other "facts" upon which we know medical experts rely (for example, the radiologist's report in Roberts, supra, a laboratory test, or the psychological test results upon which the psychiatrist often relies.) These are facts even though they are also conclusions. If we were to hold otherwise, we would thwart the very purpose for the adoption of Rule 703 in its present form. In the advisory committee's comment to the federal rule we find:

"Facts or data upon which expert opinions are based, may, under the rule, be derived from three possible sources. The first is the firsthand observation of the witness, with opinions based thereon traditionally allowed. A treating physician affords an example. Rheingold, The Basis of Medical Testimony, 15 Vand.L.Rev. 473, 489 (1962). Whether he must first

relate his observations is treated in Rule 705. The second source, presentation at the trial, also reflects existing practice. The technique may be the familiar hypothetical question or having the expert attend the trial and hear the testimony establishing the facts. Problems of determining what testimony the expert relied upon, when the latter technique is employed and the testimony is in conflict, may be resolved by resort to Rule 705. The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes."

Thus it can readily be seen that "reports and opinions from . . . other doctors" are facts or data within the contemplation of the rule.

We find it unnecessary to discuss other issues presented by the parties since no other reasons for reversal are asserted.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.